Sheldon, Ch. J.
The offense of vagrancy and the proceedings for arrest, trial and conviction therefor, have always been defined and declared by general laws of the State, applicable alike to all residents within the State, and to all places within its -jurisdiction. Certain proceedings are allowed by express statute to enforce the local ordinances of municipalities, but this conviction was had under the general law of the State which took effect September 1, 1881. The policy of these general laws has been to impose a punishment upon the offender, unless he was a proper object of charity, in order to deter him and all others from leading vagrant and idle lives.
The laws enacted in 1788 (1 R. L. 114, § 1), made no distinction between vagrants and disorderly persons: all were disorderly persons, and the punishment, upon conviction, was a commitment to the bridewell or house of correction, there to be kept at hard labor for a time not exceeding sixty days. It was provided by section 5 of the act, ‘ ‘ that the several jails in the respective cities and counties in this State, in which no bridewell or house of correction is or shall be built, shall be used and considered as such houses of correction.” The act was highly penal in its provisions, and permitted *212 various modes of punishment for all disorderly persons, such as hard labor and correction by whipping; the evident object of the legislature being to punish the offenders, unless they were proper objects of charity. The Revised Statutes of 1828 (vol. 1, p. 632), distinguished between beggars and vagrants and all other-classes of disorderly persons. In case of conviction for the former offense, the prisoner, if an improper person to be sent to the poorhouse, was to be committed to the bridewell or house of correction of the city or county where the conviction was had, if there be one, and if none, to the common jail of such county for a term not exceeding sixty days. The justice was also authorized, in his discretion, to direct that the offender should be kept upon bread and water only, for a part of the time of confinement. This last statute remained in force upon our statute book as the general law governing the proceedings for the arrest, trial and conviction of vagrants within this State, until the new Code of 1881 (see 2 R. S. [6 ed.) 836, § 3). Thus it will appear that our legislators have uniformly considered the offense of vagrancy one which should be punished by compelling the offender to labor, and to submit to the reformatory discipline of the bridewell or house of correction, or workhouse, as it might be termed.
It appears that, prior to 1846, there was no bride-well or house of correction in Erie county, and vagrants were committed to the common jail, the only place provided by law, thus entailing a great expense upon the tax-payers, and being an ineffectual mode of punishment. By the provisions of chapter 77 of the Laws of 1846, the building of the Erie county workhouse was authorized, and by section 10 it was provided that after it was determined by the commissioners who had charge of the erection of the building, that it was completed, “ every court or magistrate in the .county of Erie that shall be authorized by law to sen *213 tence or commit any person to the county jail of Erie county, as vagrants, disorderly persons, &c., may sentence such person to be confined in said workhouse at hard labor.” This act and the other similar acts applicable to other counties, in nowise interfered with the general statutes, except so far as they directed as to the place of confinement of the vagrant after conviction. The law was intended to punish the offense of vagrancy, and to provide a place of confinement where the offender should be compelled to labor, and to submit to the discipline of a prison or house of correction, and the question now is, whether the act of 1881, providing in general terms as a general act for the whole State, that vagrants, if improper persons to be committed to the poorhouse, “must be committed to the county jail,” has repealed the provisions of the special act above alluded to, which directed such persons when convicted in Erie county to be committed to the Erie county workhouse.
The general rule adopted by all courts is, that ordinarily, express language is used when a repeal of a statute is intended, and a repeal by implication is not favored. The principle to be observed is, that a special act is not to be repealed by the implied force of general laws (Village of Deposit v. Devereux, 8 Hun, 317, 318). Chief Justice Nelsost declared, that, “The invariable rule of construction in respect to the repealing of statutes by implication is, that the earliest act remains in force, unless the two are manifestly inconsistent with and repugnant to each other; or unless in the latest act some express notice is taken of the former, plainly indicating an intention to abrogate it” (Bowen v. Lease, 5 Hill, 221, 225). The reason of the rule, as stated by another court, is, that when the mind of the legislature has considered the object and details of the subject of the statute, and not in express language contradicting the original act, the latter act shall *214 not be considered as intended to affect the previous provisions of the former, unless it is absolutely necessary to give the latter act such a construction that its words shall have any meaning at all (Pursell v. New York Life Ins. & T. Co., 42 Super. Ct. [J. & S.] 383, 397).
The act of 1846 was a special law relating to the establishment of a workhouse in the county of Erie. It was not under the general law of the State, and is not affected by the enactment of any general law unless plainly referred to (Village of Deposit v. Vail, 5 Hun, 310; Village of Gloversville v. Howell, 70 N. Y. 287, 291). It was intended to stand as a whole, unless expressly repealed, and the provision in it alluded to, by which it was directed that such offenders should be confined in the workhouse, was the very inducing reason why the erection of the workhouse was authorized. A general law will not, in the absence of a very evident intent on the part of the legislature to do so, and which intent must appear by the terms of the act itself, abrogate or change the provisions of a special law passed for particular cases (Matter of Delaware & Hud. Canal Co., 69 N. Y 209).
In this case, could it have been in the mind of the legislature to have repealed not only the section of the act of 1846 referred to, but also all the special legislation which has been enacted, under the authority of which the courts and magistrates of several adjacent counties are directed to commit offenders to the workhouse in Erie county ? If the claim made by the counsel for the relator is to be sustained, then the statute of 1854, directing all persons convicted of vagrancy, in the county of Dutchess, to be imprisoned at hard labor in Albany county penitentiary, is likewise abrogated, as are also numberless other statutes of alike character relating to counties, cities and villages in the State. There is nothing to found the idea upon, that the mind of *215 the legislature ever acted in the consideration of these local statutes, when it enacted this general law which, in effect, only substantially reaffirms the general law as to vagrants that has always' existed. The local statutes stand ; they have been enacted from time to time to meet the exigencies of the cities- or counties or municipalities to which they apply, and not a suggestion is made but what they accomplish a great public good.
Upon this view of the case, it was unimportant whether section 962 of the Criminal Code was enacted or not. It seems obvious that if it has any application it is the intention that this and similar local laws shall remain unaffected.
The proceedings are dismissed, and the relator is remanded to the custody of the respondent.